# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                 No. CR 06-1571 JB

LINO AVALOS-MARIN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sentencing Memorandum Submitted on Behalf of Defendant Lino Avalos-Marin, filed June 1, 2007 (Doc. 32)("Sentencing Memorandum"). The Court held a sentencing hearing on June 14, 2007. The primary issue is whether the Court should grant Defendant Lino Avalos-Marin a variance from the sentence that the United States Sentencing Guidelines recommend because: (i) Avalos-Marin illegally re-entered the United States to earn money necessary to provide support for his nephew suffering from leukemia; and (ii) Avalos-Marin's 1993 conviction for assault on a peace officer with a deadly weapon in California state court, which constitutes the basis for the most significant enhancement in his sentence, is old. Because the Court believes that, when it considers the age of Avalos-Marin's state conviction in the context of the statutory factors applicable to the Court's sentencing analysis under 18 U.S.C. § 3553(a), the sentence the Guidelines recommend is greater than necessary to satisfy federal sentencing objectives, the Court will grant Avalos-Marin a variance from the guideline sentence.

## FACTUAL BACKGROUND

Avalos-Marin was born on June 11, 1968 in Zinapecuro, Michoacan, Mexico. See Sentencing Memorandum at 8; Presentence Investigation Report ¶ 23, at 6 ("PSR"). Avalos-Marin's

parents reside in Zinapecuro; he has five siblings, four of whom live in Watsonville, California and one who resides in Zinapecuro. See Sentencing Memorandum at 8; PSR ¶ 23, at 6. Avalos-Marin has been married since 1995, and he and his wife have a nine year old child. See PSR ¶ 27, at 7. Avalos-Marin's wife and child reside in Zinapecuro. See id.

Avalos-Marin first entered the United States in 1984, settled in Watsonville, and resided there legally for approximately ten years. See Sentencing Memorandum at 9; PSR ¶ 25, at 6. Before 1993, Avalos-Marin was arrested a number of times for various misdemeanor offenses. See Sentencing Memorandum at 9; PSR ¶¶ 17-18, at 4. On August 9, 1993, however, Avalos-Marin was arrested for assault on a peace officer with a deadly weapon. See Sentencing Memorandum at 9; PSR ¶ 19, at 5.

Avalos-Marin represents that, on the day of his arrest for assault on an officer, he and a group of friends confronted a police officer beating a juvenile who was on the ground and not resisting arrest. See Sentencing Memorandum at 9. Avalos-Marin stated that, after the officer pointed his weapon at himself and his companions, a number of the individuals in his group threw beverage bottles at the officer. See id. Avalos-Marin contends that he was drinking soda from a plastic bottle, but others in his contingent were drinking beverages from glass bottles. See id.

On September 17, 1993, Avalos-Marin was convicted in Santa Cruz County, California Superior Court of Assault on a Peace Officer with a Deadly Weapon. See id.; PSR ¶ 19, at 5. The California court sentenced Avalos-Marin to 120 days in prison and 36 months probation. See PSR ¶ 19, at 5. As a result of this conviction, Avalos-Marin lost his status as a legal resident, and he was deported to Mexico in 1994. See Sentencing Memorandum at 10.

On April 7, 2004, Avalos-Marin was arrested and charged with illegal re-entry into the United States. See PSR ¶ 21, at 5. Six days later, on August 13, 2004, he was again deported to

Mexico.  See id.  Avalos-Marin represents that, between his August 13, 2004 deportation and his arrest for the instant offense, he remained in Mexico.  See Sentencing Memorandum at 10.

On April 17, 2006, United States Border Patrol agents encountered Avalos-Marin and twenty-nine other individuals walking in a desert area near Hachita, New Mexico.  See PSR ¶ 4, at 2.  Avalos-Marin admitted to the agents that he was a Mexican national and present in the United States illegally.  See id.  Avalos-Marin acknowledges that he was not authorized to be in the United States but states that he returned because he "needed to earn money to support [his] family and to help raise money to pay for medical treatment for a nephew in Mexico that is suffering from Leukemia."  Sentencing Memorandum, Attachment A, Letter from Phillip G. Sapien to Luis Rodriguez (dated September 8, 2006).

## PROCEDURAL BACKGROUND

On July 27, 2006, the United States filed an Information charging Avalos-Marin with illegal re-rentry of a deported alien after previously being convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a)(1)-(2) and (b)(2).  See Information, filed July 27, 2006 (Doc. 11).  On the same day, the United States and Avalos-Marin entered into a plea agreement, made pursuant to rule 11 of the Federal Rules of Criminal Procedure, in which Avalos-Marin pled guilty to the charge contained in the Information.  See Plea Agreement ¶ 3, at 2, filed July 26, 2006 (Doc. 15).

In calculating Avalos-Marin's guideline sentence, the United States Probation Office ("USPO") assigned Avalos-Marin a base offense level of 8, see U.S.S.G. § 2L1.2(a), increased his offense level 16 levels because he had previously been deported after being convicted of a crime of violence, see U.S.S.G. § 2L1.2(b)(1)(A)(ii), and subtracted 3 levels for Avalos-Marin's acceptance of responsibility, see U.S.S.G. § 3E1.1.  See PSR ¶¶ 8-9, 14, at 3.  An offense level of 21, combined with Avalos-Marin's criminal history category of I, results in a guideline sentencing range of 37 to

46 months. The USPO did not identify any factors that might entitle Avalos-Marin to a downward departure under the Guidelines or warrant a variance from the sentence that the Guidelines recommend. See PSR ¶ 40, at 9.

Avalos-Marin filed his Sentencing Memorandum on June 1, 2007. Avalos-Marin does not object to the factual content of the PSR that the USPO prepared or assert that the USPO calculated his guideline sentence incorrectly. See Transcript of Hearing at 3:1-3 (Sapien)(taken June 14, 2007)("Transcript").[1] Rather, he contends that the 18 U.S.C. § 3553(a) factors applicable to the Court's sentencing analysis counsel for a variance from the guideline sentence, because the sentence the Guidelines recommend is greater than necessary to achieve federal sentencing objectives. See Sentencing Memorandum at 6; Transcript at 3:5-7 (Sapien). Avalos-Marin suggests that a variance equivalent to 8 levels would be appropriate. See Sentencing Memorandum at 14. Avalos-Marin explains that such a variance would result in an offense level of 13, which, combined with his criminal history category of I, would result in a guideline sentence of 12 to 18 months -- potentially allowing Avalos-Marin to receive a sentence of time served. See id.

The United States filed a response in opposition to Avalos-Marin's request for a variance on June 7, 2007. See Response to Defendant's Sentencing Memorandum, filed June 7, 2007 (Doc. 34)("United States' Response"). The United States contends that a sentence within the correctly calculated guideline range is a presumptively reasonable sentence, and argues that Avalos-Marin has not presented evidence effectively rebutting that presumption. See id. at 2-3. The United States requests the Court impose a sentence of 37 months -- the low end of the guideline range. See id. at 6.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

**LAW REGARDING GUIDELINE SENTENCES**

The Supreme Court of the United States' holding in United States v. Booker, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46. Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-

(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See Rita v. United States, No. 06-5754, 2007 U.S. LEXIS 8269, at *21 (U.S. June 21, 2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." Id. at 260-61. Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable." Id. Second, once this presumption is established,

"[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)." United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated guideline sentencing range are not accorded a presumption of reasonableness. See United States v. Cage, 451 F.3d at 594-95. The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence. See United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006).[2]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded guideline sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita v. United States, 2007 U.S. LEXIS 8269, at *24-25. More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence." Id. at *27.

---

[2]In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach, i.e., the Tenth Circuit's understanding that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance," next term in United States v. Gall, No. 06-7949. Rita v. United States, 2007 U.S. LEXIS 8269, at *31 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the guideline range. Rita v. United States, 2007 U.S. LEXIS 8269, at *30.

## ANALYSIS

The Court has carefully considered Avalos-Marin's sentencing memorandum, the arguments of counsel at the hearing, and Avalos-Marin's own comments at the sentencing. The Court has also carefully considered all the factors that the Court should consider in determining what sentence, and length of sentence, is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Pursuant to its authority under United States v. Booker and its obligation to consider each of the factors enumerated in 18 U.S.C. § 3553(a), the Court will grant a variance from the sentence the Guidelines recommend.

**I.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE OFFENDER.**

While there is a tendency for defendants to characterize illegal re-entry as a minor crime, Congress and the Sentencing Commission have signaled otherwise with the serious penalties they have assigned to the crime. The 8-level, 12-level, and 16-level enhancements, see U.S.S.G. § 2L1.2(b)(1)(A)-(C), place the crime within Zone D on the Sentencing Table. The Court believes, however, that when it evaluates the nature and circumstances of Avalos-Marin's re-entry offense, his personal history and characteristics, and the age of the felony conviction that constitutes the basis for the most significant enhancement in his offense level, a variance from the guideline sentence is appropriate.

**A.   NATURE AND CIRCUMSTANCES OF OFFENSE.**

To his credit, Avalos-Marin does not argue that his explanation excuses his decision to return to the United States without permission, see Sentencing Memorandum at 7, nor does he argue that illegal re-entry is not a serious crime. Congress, as the elected branch of government, has decided that the crime for which Avalos-Marin has been convicted is a serious offense. See 8 U.S.C. §

1326(b)(2) (authorizing up to twenty years imprisonment for illegal reentry). Policy decisions are best left with the legislative branch and the Court believes that Congress has decided that illegal re-entry is a serious offense.

What Avalos-Marin argues is that his motivation for returning to the United States is an important factor that warrants a variance from the guideline sentence. See Sentencing Memorandum at 8. While the circumstances that Avalos-Marin and his family face are plainly unfortunate, they are not so extraordinary as to set him materially apart from the majority of other defendants convicted of illegal reentry after having been convicted of a felony. Regrettably, the Court sees this hardship in many cases in which the defendant has a family. See United States v. Hernandez-Castillo, No. CR 06-1537 JB, 2007 U.S. Dist. LEXIS 35230, at **27-28 (D.N.M. Apr. 18, 2007)(Browning, J.)(denying variance for defendant who re-entered the United States to be with his severely ill wife); United States v. Trinidad-Toledo, No. CR 06-1646 JB, 2007 U.S. Dist. LEXIS 9261, at *16 (D.N.M. Jan. 16, 2007)(Browning, J.)(denying variance for defendant who re-entered the United States to earn money for treatment for his wife suffering from diabetes mellitus type II, arterial hypertension, kidney failure, and hypercholesterolemia). The Court does not want to improperly minimize the significance of Avalos-Marin's nephew's illness, and does not question the sincerity of Avalos-Marin's concern for nephew's condition, but the Court does not believe that this factor, alone, justifies a variance from the guideline sentence.

**B.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT.**

Avalos-Marin states that, to some extent, his conviction comes from the committed and close-knit nature of his family; he suggests that he returned to the United States because of his desire to accept responsibility for his family and to contribute to their well-being and their efforts to obtain treatment for his nephew. See Transcript at 9:12-15 (Sapien). He emphasizes that, after initially

being deported in 1994, with the exception of six days in 2004, he worked under difficult conditions in Mexico.  See Sentencing Memorandum at 10.

Avalos-Marin also submits that the Court should vary from the guideline sentence because his 1993 conviction, which constitutes the basis for the most significant enhancement in his offense level, is old.  See id. at 11.  He argues that, in the significant period of time between his 1993 conviction and the present offense, he has aged and matured, and has not engaged in any criminal conduct other than his 2004 re-entry offense.  See Transcript at 8:11-14 (Sapien).  Finally, Avalos-Marin concludes that, considering the circumstances of the 1993 case and the relatively minor jail sentence the California court imposed in association with his conviction, it "is now unnecessary and unreasonable for this Court to impose a sentence of more than three years incarceration because of the 16 level enhancement outlined in the sentencing guidelines."  Sentencing Memorandum at 11.

The Court notes that, because of the age of his 1993 conviction, Avalos-Marin has not received any criminal history points in association with the conviction.  See PSR ¶ 19, at 5.  To some extent, therefore, Avalos-Marin has already benefitted under the Guidelines from the age of his conviction.  Nevertheless, the Court acknowledges that the 1993 conviction still results in a 16-level enhancement and believes that, when considering the overall adjusted offense level in the context of the 18 U.S.C. § 3553(a) factors applicable to its analysis, the offense level is too high.  While the Court does not believe that either Avalos-Marin's motive for re-entering the United States or the age of his 1993 conviction, standing alone, justify a variance, it does believe that when viewed together, and evaluated in the overall context of his case, some variance is appropriate.

Although a presumption of reasonableness does not limit a sentencing court's discretion, see Rita v. United States, 2007 U.S. LEXIS 8269, at *24-25, the Court continues to believe that the Guidelines are a helpful place to begin its sentencing analysis and are useful in keeping sentences

consistent among similarly situated defendants. In this case, however, when the Court considers the nature of and motivation for the re-entry offense, combined with the nature and age of the 1993 assault offense, it believes that the sentence the Guidelines produce is greater than necessary to satisfy federal sentencing goals. The Court believes that a sentence consistent with an offense level of 17 -- which would reflect a 12-level increase rather than a 16-level increase over the base offense level for a re-entry conviction and which would result in a guideline sentencing range of 24 to 30 months -- more accurately reflects the policies that are expressed in the Guidelines and results in a reasonable sentence that is sufficient without being greater than necessary to achieve Congress' sentencing objectives.

## II. THE NEED FOR THE SENTENCE TO PROMOTE CERTAIN STATUTORY OBJECTIVES.

Among other objectives, the Court's sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large. The Court believes that the sentence of 24 months, the low-end of the range it has found, reflects the seriousness of the re-entry offense, but also promotes respect for the law and provides just punishment. The Court also believes that this sentence affords adequate deterrence and protects the public. In reaching this determination the Court finds it notable that Avalos-Marin has demonstrated a willingness and an ability to remain out of the United States after being deported and believes that the period of incarceration it is imposing will serve as a greater deterrence than it might otherwise in other cases the Court sees. The Court believes that a sentence of 24 months fully reflects each of the factors enumerated in 18 U.S.C. § 3553(a), including the need to impose uniform sentences to similarly situated defendants.

In sum, the sentence accounts for the Court's concerns regarding the motivation of Avalos-

Marin's re-entry offense and the age and nature of his 1993 assault offense, but still reflects the important policies behind federal immigration laws.  The Court believes that a variance from the sentence the Guidelines recommend to a sentence of 24 months is fair, reasonable, and sufficient without being greater than necessary to meet federal sentencing objectives.

**IT IS ORDERED** that the request for a variance from the guideline sentence contained in the Sentencing Memorandum Submitted on Behalf of Defendant Lino Avalos-Marin is granted in part and denied in part.  The Court will not sentence Avalos-Marin to time served or in the 12 to 18 month range, but will vary from the advisory guideline range and sentence Avalos-Marin to 24 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
    for the District of New Mexico
Roberto D. Ortega
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Phillip G. Sapien
Sapien Law, LLC
Albuquerque, New Mexico

     *Attorney for the Defendant*